APELIO FELICES PORTILLA, demandante y apelado, *v.* PORTO RICO IRON WORKS, INC., demandada y apelante.

No. 6433.—*Sometido:* Noviembre 16, 1934. *Resuelto:* Noviembre 30, 1934.

*F. Parra Capó* y *F. Parra Toro,* abogados de la apelante; *José S. Alegría,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CORDOVA DÁVILA, emitió la opinion del tribunal.

Es ésta una acción en cobro de pesos basada en un contrato celebrado en 29 de noviembre de 1929 entre el demandante Apelio Felices Portilla y la demandada Porto Rico Iron Works Inc. Se alega que este contrato se llevó a cabo en virtud de gestiones que realizara el demandante a requerimiento de la demandada, para la incorporación de la sociedad industrial Sobrinos de Portilla y control de dicha corporación por la referida demandada Porto Rico Iron Works Inc.

El contrato a que nos venimos refiriendo anulaba y dejaba sin efecto un contrato anterior existente entre las mismas partes, de fecha 16 de septiembre de 1929, en que la demandada apelante se comprometía a asegurarle al demandante un adelanto mensual de $350 por sus servicios con la nueva corporación que iba a formarse de la sociedad Sobrinos de Portilla. El contrato de 16 de septiembre de 1929 dice, en parte, así:

"Al mismo tiempo nos comprometemos a asegurarle un adelanto de $350 mensuales por sus servicios con la nueva corporación de Sobrinos de Portilla Inc. durante el término de cinco años, sujeto este compromiso a las condiciones generales sobre el retiro de actuales socios que se encuentren en el contrato de la adquisición."

El contrato de fecha 29 de noviembre de 1929 en lo pertinente dice:

"Anulamos el convenio existente según carta de la Porto Rico Iron Works Inc. de fecha 16 de septiembre de 1929, y en su lugar convenimos que la Porto Rico Iron Works Inc. garantizará un adelanto mensual de $350 durante la vigencia de su contrato de empleo con la corporación a formar Sobrinos de Portilla Inc., al señor Ape-

lio Felices Portilla, en consideración de su sueldo y participación de los beneficios.''

Se alega por el demandante y admite por la demandada que habiéndose efectuado la incorporación de Sobrinos de Portilla bajo el nombre de Portilla Iron Works Inc., y pasado el control de ésta a manos de Porto Rico Iron Works Inc. a virtud de las gestiones del demandante, se efectuó un contrato de servicios, con fecha 27 de enero de 1930, entre el demandante y dicha corporación Portilla Iron Works Inc., de común acuerdo con la demandada Porto Rico Iron Works Inc., bajo las siguientes cláusulas:

''1. La primera parte se compromete a prestar sus servicios a la segunda parte como jefe del departamento de ventas en el establecimiento de la segunda parte, en San Juan, P. R., así como cualquier otro servicio para que sea requerido dentro de la línea general del negocio por la Junta Directiva.

''2. Este contrato se llevará a efecto por un plazo de cinco (5) años que empezarán a contarse el día 18 del corriente mes de enero, a cuya fecha se retrotraen los efectos del mismo.

''3. La primera parte devengará por sus servicios la cantidad de doscientos setenta y cinco dólares ($275.00) mensuales. Además como otra compensación tendrá derecho a un cinco por ciento (5%) del beneficio líquido que tenga anualmente la corporación.''

La prueba aportada demuestra que la demandada entregó al demandante una cantidad mensual de $75 desde marzo primero a octubre 2 de 1930, y que el demandante acusó recibo de estas cantidades en sendos documentos redactados por la demandada que dicen así:

''Recibí de Porto Rico Iron Works Inc. la suma de setenta y cinco dólares como adelanto a cuenta del 5 por ciento del beneficio neto anual de la corporación Portilla Iron Works Inc. que me corresponde según mi contrato de empleo con dicha corporación y cuya cantidad autorizo a que se descuente y entregue a la Porto Rico Iron Works Inc. al hacérseme dicha liquidación.''

Admite la demandada que ha dejado de satisfacer al demandante las sumas correspondientes a los meses de agosto,

1930, a septiembre, 1931, o sea doce meses, que a razón de $75 mensuales arrojan la cantidad de $900, y alega que los pagos mensuales realizados con anterioridad a esta fecha los hizo como adelanto a cuenta del 5 por ciento del beneficio neto anual de la corporación Portilla Iron Works Inc., para ser dicha suma descontada al demandante por la demandada al hacerse la liquidación anual de dichos beneficios.

La parte demandada alega que ha satisfecho al demandante desde el 29 de noviembre de 1929 hasta el día 30 de julio de 1930 la suma de $675, y establece contrademanda contra el Sr. Felices reclamando dicha suma.

La corte inferior declaró con lugar la demanda y desestimó la contrademanda, condenando a la demandada al pago de la suma reclamada con sus intereses legales desde la interposición de la demanda y las costas y honorarios de abogado. La parte apelante alega que la corte inferior cometió error al considerar que la obligación contraída era de carácter principal y que la intención de las contratantes al otorgar el contrato fué garantizar al demandante una cantidad mensual de $350 durante la vigencia de su contrato de servicios, lo que equivalía a que la demandada apelante garantizara un mínimum de beneficio de $75 mensuales.

Vemos que el 16 de septiembre de 1929 la demandada contrajo el compromiso de asegurar al demandante un adelanto de $350 mensuales por sus servicios a la nueva corporación Sobrinos de Portilla, y que más tarde, en 29 de noviembre de 1929, se anuló este contrato, comprometiéndose entonces la demandada a garantizar al demandante un adelanto mensual de $350 en consideración de su sueldo y participación de los beneficios. Parece deducirse que primeramente se aseguró al demandante un adelanto de $350 por su salario y que más tarde las partes tuvieron en cuenta, al establecer la garantía, el sueldo del demandante y su participación en los beneficios. Que ésta fué la intención de los contratantes queda claramente demostrado en el convenio efectuado en 27 de enero de 1930, explicativo y aclaratorio

del convenio anterior. En este último convenio se fijan $275 mensuales al demandante por sus servicios y se dice que además, como otra compensación, tendrá derecho a un 5 por ciento del beneficio líquido que tiene anualmente la corporación.

Y para que no haya dudas acerca de lo convenido por las partes, el propio demandante acepta, en un documento autorizado con su firma, la suma de $75 como adelanto a cuenta del 5 por ciento del beneficio aludido para ser descontado y entregado a la Porto Rico Iron Works Inc. al hacerse la liquidación.

Se alega en la demanda y se admite en la contestación que no se liquidaron beneficios en los balances de Portilla Iron Works Inc. Sin embargo, el tesorero de la demandada, Luis Ferré, declara que el primer año la casa de Portilla tuvo un beneficio de $4,000 aproximadamente y el segundo una pérdida de $7,000. El demandante declara que el pago de los $75 mensuales no era a cuenta de beneficios directamente, sino a cuenta de sueldos y beneficios. Con respecto a los recibos autorizados, copiamos a continuación el **testimonio** del demandante respondiendo a preguntas de la demandada:

"A. Tenga la bondad de examinar estos siete (7) documentos que le presento.

"T. Ocho (8) pagos que me hicieron.

"  *       *       *       *       *       *       *

"A. ¿De modo que según este recibo y los demás que son todos iguales, usted recibía de Porto Rico Iron Works Inc. la suma de setenta y cinco (75) dollars como adelanto a cuenta del cinco por ciento (5%) del beneficio neto anual de la corporación Portilla Iron Works Inc. que le correspondía a usted según su contrato de empleo con dicha corporación, y cuya cantidad de setenta y cinco (75) dollars autorizaba 'a que se descuente y entregue a la Porto Rico Iron Works Inc. al hacérseme dicha liquidación'?

"T. Yo confieso haber recibido esos setenta y cinco (75) pesos mensuales a cuenta de sueldos y beneficios del cinco por ciento (5%) que me garantizaron ellos que tendría yo en la corporación Portilla Iron Works.

"A. ¿Este recibo representa el contrato entre ustedes?

"T. No. Sueldos y beneficios, como lo dice el contrato original y lo dice la carta original que está ahí.

"A. ¿De modo que usted firmó este recibo que no era verdad? ¿Un recibo que no demostraba exactamente la operación que usted había hecho?

"T. Como eran setenta y cinco (75) pesos que yo recibía, pues firmaba. Siempre había la creencia de que estaba tratando uno con . . .

"A. (Interrumpiendo). ¿De modo que usted, con tal de echarse los setenta y cinco (75) pesos al bolsillo, hubiera estado dispuesto a firmar cualquier clase de recibo que le hubieran presentado, aunque no fuera la verdad?

"T. Eso era parte del contrato. Se hablaba de beneficios.

"A. ¿En qué quedamos entonces? ¿Este recibo es expresivo de la verdad de la operación que usted hizo con estos señores?

"T. Es expresivo de parte de la verdad.

"A. ¿Y por qué no de toda la verdad?

"T. Porque cada vez que yo llamaba la atención, siempre me decían: 'Ah, entre nosotros no habrá diferencia.' "

El testigo Luis Ferré, Tesorero de la demandada, declara que en 16 de septiembre el Sr. Apelio Felices y el Sr. Ramón Riancho fueron donde la Porto Rico Iron Works Inc. para ver si esta corporación tenía interés en hacerse cargo del negocio de Portilla en San Juan. "Nos hicieron," dice el testigo, "la proposición de que si se les garantizaba a ellos un sueldo mensual de $350 a uno y $400 al otro, y al mismo tiempo se les daba una comisión de $6,000 a uno y $4,000 al otro, ellos estarían dispuestos a trabajar con nosotros, y dejar que nosotros dirigiéramos y administráramos el negocio de San Juan. A ese efecto nos concedieron, el 1ro. de octubre, una opción para que durante un período de dos meses la Porto Rico Iron Works Inc. hiciera una investigación de los libros de Sobrinos de Portilla y decidiera si les convenía o no hacerse cargo de aquel negocio bajo estas condiciones que los señores imponían. Se hizo el estudio de la contabilidad y antes de vencerse el plazo para la aceptación o el rechazo de la proposición, se

llegó a la conclusión de que el negocio estaba en condicio-
nes muy serias y que por lo tanto era imposible que el nego-
cio, sin obtener ciertas concesiones especiales, siguiera ade-
lante. A este efecto, antes de esa fecha, o sea el 29 de no-
viembre, dos días antes de terminar el plazo de la opción,
o un día antes, llamamos al señor Felices y al señor Rian-
cho y les dijimos: 'Señores, esta compañía, si la vamos a
trabajar, no puede pagar los sueldos que ustedes quieren.
De manera que nosotros no estamos dispuestos a firmar la
opción a menos que ustedes estén dispuestos a cancelar el
convenio que tenemos con ustedes de sueldo y aceptar suel-
dos inferiores a esas cantidades.' Los señores Felices y
Riancho nos dijeron que estaban conformes, pero que ellos
necesitaban dinero inmediatamente y que entonces nosotros
les fuéramos adelantando a cuenta del beneficio que el ne-
gocio iba a tener, la diferencia entre el sueldo que el nego-
cio podía darles y el que ellos demandaban. A ese efecto
se firmó este convenio, el cual anulaba la carta de septiem-
bre 16, y en el cual se especificaba que el sueldo por servi-
cios sería trescientos cincuenta (350) dollars y se especifi-
caba que se le darían trescientos cincuenta dollars, pero
que parte de este dinero, que convinimos verbalmente sería
setenta y cinco dollars, se le adelantaría a cuenta de bene-
ficios que tuviera la compañía. Durante un año entero la
compañía empezó a trabajar y durante el primer año nosotros
le seguimos adelantando setenta y cinco dollars al señor
Felices y cien al señor Riancho a cuenta de los beneficios
de la casa. Los planes que tuvimos no resultaron y la casa
arrojó un beneficio sumamente pequeño y empezó a arrojar
pérdidas al año siguiente. De manera que como lo que es-
tuvimos haciendo era una concesión a cuenta de un bene-
ficio que iba a tener la casa, les dijimos a los señores Feli-
ces y Riancho que no podíamos seguirles adelantando ese
dinero puesto que el beneficio no había cristalizado y no ha-
bía ninguno tampoco al año siguiente. Esa es la relación
de los hechos.''

La corte inferior llegó a la conclusión de que Portilla Iron Works Inc., controlada por Porto Rico Iron Works Inc., pagó al demandante su sueldo de $275 y que la cantidad de $75 mensuales fué satisfecha por la demandada durante ocho meses como adelanto a cuenta de los beneficios y autorizando al demandante para descontar dicha cantidad y entregarla a la demandada al hacerse la liquidación; pero entiende que la obligación de la demandada es principal y que la intención de los contratantes al otorgar el contrato fué garantizar al demandante una cantidad mensual de $350 durante la vigencia de su contrato de servicios, sin determinarse en él el montante del sueldo. "Ambos contratos," dice la corte, "presumen la existencia de beneficios, se garantizaron éstos por la demandada como parte del contrato de servicios, y el hecho de que no los hubiera en definitiva no la exime de la responsabilidad de pagarlos al demandante hasta la cantidad garantizada."

Convenimos con la corte inferior en que las partes creyeron que el negocio había de producir beneficios. Es natural que abrigaran esta esperanza. Así ocurre siempre cuando se inicia un negocio y así se explica que la demandada garantizara el anticipo en la creencia de que habría beneficios para devolverle la cantidad anticipada; pero esto no quiere decir que el demandante tenga un derecho de acción para reclamar el anticipo prometido después de transcurrido el tiempo durante el cual debió haberse satisfecho dicho anticipo. Puede que el demandante, cuando la demandada dejó de pagarle el adelanto, hubiese tenido un derecho de acción para obligarla a cumplir su compromiso; pero después de transcurrido un año sin haberse obtenido beneficio, la parte actora no debe tener derecho a que se le adelante una suma cuyo reembolso no puede ser obtenido, ya que no existen beneficios y la suma reclamada tiende a cubrir mensualidades atrasadas. Conforme a lo convenido el pago tiene el carácter de un adelanto que debe reembolsarse de los beneficios al hacerse la liquidación. Pero si se espera

a que se haga esta liquidación y de la misma resulta que no hay beneficios, no puede existir obligación de pagar sin esperanzas de reembolso. Aun asumiendo la existencia de beneficios, si no se anticipó el pago y se esperó a la liquidación, la demandada estaría obligada a entregar al demandante, no un anticipo que ya no tendría razón de ser, sino su beneficio real y efectivo para cubrir las mensualidades atrasadas. El tesorero de la demandada dice que en vista de que la casa arrojó el primer año un beneficio sumamente pequeño y empezó a arrojar pérdidas al año siguiente, se le dijo a los Sres Felices y Riancho que no podían seguirles adelantando ese dinero, puesto que el beneficio no había cristalizado y no había tampoco ninguno al año siguiente. Es éste el momento en que la parte actora pudo tener algún derecho para ejercitar su acción; pero no después de transcurrido el año y admitido por ambas partes que durante ese año no hubo beneficio. De acuerdo con lo convenido el demandante debía devengar $275 mensuales por sus servicios, y además como otra compensación tendría derecho a un 5 por ciento del beneficio líquido que tuviera anualmente la corporación. Es a cuenta de este 5 por ciento del beneficio neto anual, según lo admite bajo su propia firma el demandante, que la demandada adelantaba la suma de $75 mensuales para ser descontada al demandante y entregada a la demandada al practicarse la liquidación. Ahora bien, ¿cuándo debía hacerse la liquidación? A nuestro juicio, anualmente, ya que parece natural que se practicara una liquidación todos los años a fin de averiguar "el beneficio líquido que tenga anualmente la corporación", y que se hiciese también anualmente el descuento al demandante de la cantidad anticipada para devolverla a la demandada.

Por estas razones opinamos que debe declararse sin lugar la demanda.

■ En cuanto a la contrademanda, se ha demostrado mediante prueba documental que la demandada pagó al demandante ocho mensualidades a razón de $75 que arrojan un

total de $600, y que la corporación Portilla Iron Works Inc. tuvo algunos beneficios durante el primer año de sus actividades. El tesorero de la demandada admite en su declaración que de estos beneficios correspondían al demandante la cantidad de $300. Siendo ello así, opinamos que el demandante debe devolver a la demandada la cantidad de $300 que le pagó como anticipo de beneficios que no fueron producidos.

Debe revocarse la sentencia apelada y dictarse otra en su lugar declarando sin lugar la demanda y con lugar la contrademanda, condenando al demandante a satisfacer a la demandada la cantidad de $300, todo ello sin especial condenación de costas.

El Juez Asociado Señor Aldrey no intervino.